

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 13, 2018

**BY ECF AND EMAIL**
The Honorable Richard J. Sullivan
United States Circuit Judge
Second Circuit
40 Foley Square
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

    Re:  *United States* **v.** *Darnell Feagins*, 17 Cr. 377 (RJS)

Dear Judge Sullivan:

    The defendant in this violation of supervised release proceeding is scheduled to appear before the Court on November 20, 2018, at 4:00 p.m. for sentencing on the admitted Specifications 19 through 22 detailed in the June 14, 2018 violation report (the "Violation Report"). For the reasons that follow, the Court should impose a sentence within the high end of the 18 to 24 months range of imprisonment applicable pursuant to the U.S. Sentencing Guidelines (the "Guidelines Range"), followed by a new term of supervised release.

    In addition, the Government informs the Court that it has notified the two victims identified in Specifications 19 through 22, namely the victim unlawfully recorded by the defendant ("Victim-1") and her wife ("Victim-2"), regarding the court proceedings in this matter, their rights under the Crime Victim Rights Act, and the upcoming sentencing. Both victims have prepared written statements for the Court's consideration at sentencing, which the Government requests be filed under seal as Exhibits to this submission (Victim-1's submission is attached as Exhibit 1, and Victim-2's submission is attached as Exhibit 2). At this time, the victims have not decided whether they would also like to make an oral statement at sentencing, but they have been advised of their right to do so.

    **I.**    **Factual Background**

    On January 4, 2012, the defendant pled guilty to endangering the welfare of a child, a class A misdemeanor, in violation of N.Y.P.L. § 260.10(01), and criminal sexual act in the second degree, a class D felony, in violation of N.Y.P.L. § 130.50, in New York Supreme Court, Kings County. The facts of that case are as follows: on September 7, 2011, the defendant, who was 24 years old at the time, put his hands on the victim's vagina under her clothes, slapped her on the face, held her hands together, and pushed her back on the bed as she struggled to break away, at which point the defendant pulled down the victim's pants and underwear and inserted a finger into her vagina, put his mouth on her vagina, attempted contact between his penis and her mouth, and touched her breast. (Presentence Investigation Report, dated Aug. 4, 2015, *United States v. Darnell Feagins*, No. 4:15 Cr. 15 (CDL)(MSH)). The defendant was sentenced to one year of

Hon. Richard J. Sullivan                                                                                                      Page 2
November 13, 2018

imprisonment on the first charge and two years of imprisonment on the second charge, followed by five years of supervision. At the time of this conviction, the defendant became subject to sex offender registration.

On July 15, 2013, the defendant was released from prison and placed on parole. On July 22, 2013, the defendant completed a "Sex Offender Change of Address" form that indicated he would reside in Brooklyn. The defendant then absconded from parole supervision, and on October 1, 2013, a parole violation warrant was issued for his arrest.

In July of 2014, the New York Department of Corrections received an anonymous tip that the defendant was living at a specific residence in Columbus, Georgia. During the course of the U.S. Marshals' investigation, several witnesses confirmed the defendant's presence at the residence in Columbus, Georgia over the preceding months. In addition, law enforcement learned that the defendant had never registered as a sex offender in Georgia, and a second local warrant for failure to register as a sex offender was issued. Ultimately, on August 15, 2014, the defendant was arrested at a residence in Opelika, Alabama, after he was found hiding on a balcony at the residence.

On March 12, 2015, a federal grand jury in the Middle District of Georgia indicted the defendant for failure to register as a sex offender in Georgia, in violation of 18 U.S.C. § 2250(a). On May 14, 2015, the defendant pled guilty to the single count indictment, and on August 14, 2015, the defendant was sentenced to 27 months' imprisonment, to run consecutively to any sentence imposed by the New York Supreme Court in Kings County for the defendant's violation of parole. In addition, the defendant was sentenced to five years of supervised release, which included the special condition that the defendant participate in a program to complete his GED.

On July 29, 2016, the defendant was released from federal custody to the custody of the New York Department of Corrections to address the violation of his parole. On November 29, 2016, he was released from the custody of New York Department of Corrections to continue his state term of supervision and start his federal term of supervision. The defendant, however, never reported to federal supervision. On April 26, 2017, Probation at the Middle District of Georgia learned from the New York State Department of Corrections and Community Supervision that the defendant was residing at the Willow Men's Shelter on 781 East 135th Street, Bronx, New York.

On June 15, 2017, the defendant's federal supervision was transferred to the Southern District of New York and to Your Honor. On June 21, 2017, on the recommendation of Probation and the consent of the defendant, Your Honor modified the conditions of the defendant's supervised release to add sex offender treatment, a search condition, and a prohibition that the defendant interact with minors.

On May 2, 2018, the defendant was arrested for violating his state parole, and he was detained. The defendant remained in state custody until he was transferred to federal custody on July 12, 2018. According to documentation provided by the defendant's state parole offer, the defendant was charged with violating his parole by using Facebook and Facebook Messenger without the permission or knowledge of his parole officer, recording on video Victim-1 performing oral sex on the defendant without her knowledge or consent, displaying that video on Facebook Messenger without Victim-1's knowledge or consent, and threatening the safety of Victim-1's

minor son. During the preliminary hearing, the state parole officer only proceeded on the violation regarding the defendant's use of Facebook without the state parole officer's permission, and probable cause was found to support that violation. Ultimately, according to the defendant's state parole officer, the defendant's parole was "revoked and restored," and the defendant's parole supervision expired on July 15, 2018.

On June 14, 2018, after interviewing Victim-1 and Victim-2, Probation submitted to the Court a violation report for the defendant that included 22 specifications arising generally out of the defendant's same conduct at issue in the state parole violation proceedings. The specifications included 12 grade A specifications, 1 grade B specification, and 9 grade C specifications, which included charges regarding sexual abuse, criminal sexual act, coercion, assault, stalking, harassment, unlawful surveillance, and dissemination of an unlawful image, among other things.

On July 12, 2018, after the termination of the defendant's state parole proceedings, the defendant was transferred to federal custody, and the Court arraigned the defendant on the 22 specifications and remanded the defendant. The defendant has remained in federal custody since that time.

On August 28, 2018, the defendant admitted to Specifications 19 though 22 of the Violation Report, which charged the defendant with the following: (19) harassment in the second degree, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 240.26; (20) unlawful surveillance in the second degree, a class E felony and grade B violation, in violation of N.Y.P.L. § 250.45(5); (21) dissemination of an unlawful surveillance image, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 250.55; and (22) unlawful disclosure of an intimate image, a grade C violation, in violation of New York City Law 10-177.

These Specifications arise out of an incident in the first few months of 2018 in which the defendant, while in a hallway in Victim-1's building, recorded on his phone Victim-1 performing oral sex on the defendant without Victim-1's knowledge or consent. According to Victim-1, the defendant and Victim-1 had met in approximately November 2017, and they texted and spoke on the phone regularly about their personal lives and families. Although the Government acknowledges that the defendant has not admitted to Specifications 1 through 18 and disputes those Specifications, if Victim-1 were to testify, the Government expects that she would state that the defendant forced Victim-1 to perform oral sex on him on three occasions between approximately December 2017 and the first few months of 2018; the first incident occurred in Central Park and the second and third incidents occurred in a hallway in Victim-1's building, the last of which the defendant recorded on his phone. With respect to the last incident, according to Victim-1, the defendant was waiting outside of Victim-1's building and directed Victim-1 to reenter the building, get in the elevator, and then exit on a random floor. The defendant was verbally aggressive and shoved and pushed Victim-1. Victim-1 was fearful, including of falling down the stairs if she resisted, and she acquiesced and performed oral sex on the defendant. After Victim-1 finished performing oral sex on the defendant, she noticed that the defendant was trying to put his phone back in his pocket, and she saw her face on the phone's screen. Victim-1 tried to grab the phone from the defendant out of a concern that he had recorded her. The defendant grabbed Victim-1's hand and exerted enough pressure that she dropped the phone; a tussle for the phone ensued, during which the defendant pushed Victim-1 to the floor. Victim-1 asked the defendant to delete whatever he had done. The defendant, in sum and substance, told Victim-1 that he would deleted it when

he wanted to and that Victim-1 better not say anything, and the defendant left Victim-1 in the hallway. Beginning on approximately April 22, 2018, the defendant began sending via Facebook Messenger the video recording of Victim-1 to Victim-1's friends and family, including Victim-2, Victim-2's sister, close friend, and cousin, and two close friends of Victim-1, among possibly others. The defendant continued to send messages via Facebook Messenger to Victim-2 over the course of several days, talking about Victim-1 using sexually explicit language and taunting Victim-2. As indicated in Victim-1 and Victim-2's written statement submitted under seal for the Court's consideration at sentencing, the defendant's conduct has severely traumatized Victim-1 and significantly emotionally harmed Victim-2.

## II.     Applicable Law and Analysis

When a defendant violates the conditions of his supervised release, a court may revoke the term of supervised release and impose a term of imprisonment after considering the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 18 U.S.C. § 3583(e)(3). Here, because the defendant was originally convicted of a Class C Felony, the maximum term of imprisonment the Court can impose is two years. *Id.* The applicable range of imprisonment pursuant to the U.S. Sentencing Guidelines is 18 to 24 months (the "Guidelines Range") because Specification 20 to which the defendant admitted is a Grade B violation and because the defendant is in Criminal History Category V. U.S.S.G. § 7B1.4.

The "primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States* v. *Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

The Government requests that the Court impose a sentence within the high end of the Guidelines Range. Here, the Court trusted the defendant to follow the terms of his supervision, including the most basic term—not to commit additional crimes. The defendant has demonstrated a clear disregard for that trust by committing additional sex-related crimes, even while attending sex offender treatment as ordered by the Court. In addition, a sentence within the high end of the Guidelines range is necessary to reflect the seriousness of the defendant's conduct. 18 U.S.C. § 3553(a)(2)(A). The defendant's conduct harmed real victims, who will likely suffer long-lasting emotional harm due to the defendant's conduct. The defendant also engaged in the offense conduct over a sustained period of time, recording Victim-1 without her consent on one date and then later sending the recording to a number of Victim-1's friends and family members in order to maximize the harm and embarrassment to Victim-1 and Victim-2. The defendant's harassing Facebook messages to Victim-2 continued over several days. This shows that the defendant's conduct was not a brash, single poor decision but a deliberate effort over a continued period of time to harm Victim-1 and Victim-2.

A sentence within the high-end of the Guidelines Range is also necessary to afford adequate deterrence to the defendant and protect the public form further crimes of the defendant. 18 U.S.C. §§ 3553(a)(2)(B), (C). It is clear from the defendant's conduct that the previous terms

of imprisonment served by the defendant—the two years' imprisonment for the defendant's criminal sexual act conviction and the 27 months' imprisonment for the failure to register as a sex offender conviction—have not deterred the defendant from committing additional crimes, and even more incredibly, specifically new sex-related crimes.  Because the defendant served two terms of imprisonment spanning 24 to 27 months and nevertheless was not deterred from committing additional crimes, a sentence within the high-end of the Guidelines Range that is at least comparable in length to the prior terms' of imprisonment served by the defendant is required to deter the defendant adequately.  In addition, the fact that the defendant committed the instant offenses while attending sex offender treatment shows that other forms of deterrence short of imprisonment have not deterred the defendant from engaging in additional sex-related crimes.

Finally, a sentence within the high-end of the Guidelines Range is appropriate for general deterrence as it would send a message to other individuals who surreptitiously record others engaging in sexual acts and then disseminate the recording, an increasing problem in the current digital age known as "revenge porn," that such conduct will not be tolerated in our society.

### III.   Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the high-end of the Guidelines Range, followed by a new term of supervised release.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Cecilia E. Vogel
Assistant United States Attorney
(212) 637-1084

cc: Alan B. Seidler, Esq. (by ECF and email)
    U.S. Probation Officer Hillel Greene (by email)