IBKJFEAS                    Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                          17 Cr. 377 RJS

5    DARNELL FEAGINS,

6               Defendant.

7    ------------------------------x

8

9                                      November 20, 2018
                                       4:00 p.m.
10

11

12   Before:

13                    HON. RICHARD J. SULLIVAN,

14                                      District Judge

15

16                         APPEARANCES

17

18   GEOFFREY S. BERMAN,
          United States Attorney for the
19        Southern District of New York
     CECILIA E. VOGEL,
20        Assistant United States Attorney

21   BERNARD ALAN SEIDLER,
          Attorney for defendant Feagins
22

     Also Present:
23        HILLEL GREENE,
          United States Probation Officer SDNY
24

25

IBKJFEAS                          Sentence

1          (In open Court)

2          THE COURT:  Good afternoon.  I'll take appearances.

3          (Case called)

4          THE COURT:  Mr. Feagins, good afternoon.

5          We have family or relatives here, Mr. Seidler?

6          MR. SEIDLER:  Mr. Feagins' mother, your Honor.

7          THE COURT:  Welcome.  Everybody is welcome here.  It

8   is a public courtroom, so anyone who wants to come is certainly

9   free to come, but I know you wrote me a letter as well about

10  your son, so thank you for doing that.  It is helpful to get

11  letters of this kind.

12         We are here for sentencing.  Mr. Feagins, admitted to

13  two specifications, right?  No?  Four?

14         MS. VOGEL:  That's correct, it was four.

15         THE COURT:  19 through 22?

16         MS. VOGEL:  Correct.

17         THE COURT:  So there were a number of other

18  specifications he did not admit to, but he admitted to

19  Specifications 19 through 22, and so we're proceeding today

20  with sentencing.  I want to go over with everybody what I

21  received in connection with sentencing.  If I have left

22  something out, of course, let me know.

23         First of all, I have reviewed the report prepared by

24  the Probation Office on June 14th of this year that lays out

25  the various alleged violations as well as some background.  I

IBKJFEAS                          Sentence

1   have also reviewed the transcript of the proceeding that took

2   place on July 12th.  That was the initial appearance, and the

3   August 28th transcript in which Mr. Feagins admitted to

4   Specifications 19 through 22.

5          I have reviewed Mr. Seidler's sentencing memorandum

6   which is dated November 9th.  It is a two-page letter that also

7   attaches a number of letters, including one from Mr. Feagins,

8   including letters also from family members.  So it also

9   attached -- well, a letter of November 13th attached some

10  additional materials, including certificates of programs

11  completed by Mr. Feagins at various times as well as a resume

12  of sorts.  So I have reviewed all of that.

13         The government sent a submission, dated November 13th,

14  which is five pages, single-spaced.  The government also

15  included a couple of exhibits which were filed under seal, and

16  they include letters from victims of the specifications.  So I

17  have reviewed those.

18         Finally, I have a November 15th submission from Mr.

19  Seidler just indicating -- a short letter just saying that Mr.

20  Feagins disputes the sexual conduct that was recorded and

21  posted saying it was coerced.  He is suggesting it was

22  consensual.  In any event, none of the specifications related

23  to coerced sexual activity were admitted to.  I am not going to

24  proceed on the basis of a coercion, but what he pled to is

25  pretty serious in itself.

IBKJFEAS                    Sentence

1          I have also reviewed the materials from the Middle

2    District Of Georgia related to the initial sentencing.  I

3    didn't sentence Mr. Feagins.  He was sentenced down in Georgia

4    back in 2015, and the case was then assigned to me after the

5    supervision or the supervised release of Mr. Feagins was

6    transferred to this district.  I reviewed those materials as

7    well.  That is what I have.

8          Is there anything else I have overlooked?

9          MS. VOGEL:  No, your Honor.

10          MR. SEIDLER:  No, sir.

11          THE COURT:  So a sentencing for violation of

12   supervised release is a little different than a sentencing for

13   a crime after a trial or after a guilty plea and indictment.

14   Generally speaking, the focus for violation of supervised

15   release is the breach of trust reflected by the violation.  So

16   it is not largely punitive.  It is really about the breach of

17   trust.

18          That is not to say the court doesn't also consider the

19   nature of the violations and concerns about recidivism,

20   concerns about deterrence, both general and specific.  Those

21   are still legitimate inquiries.  Of course, the Judge also has

22   to consider the facts and circumstances of the defendant's life

23   and the facts and circumstances of the particular violations.

24   So I have to consider all of those things.

25          The focus is not so much on punishment or retribution

1    as much as what I talked about before.  I still do have to

2    consider the sentencing guidelines, but the sentencing

3    guidelines with respect to violation of supervised release are

4    purely advisory, and they were always so.  In this case, I

5    don't think there is any disagreement as to how the guidelines

6    apply here.  The violations in question, they're all Grade C

7    violations.  They're all, therefore --

8              MR. SEIDLER:  One is a Grade A, your Honor.

9              MS. VOGEL:  Grade B.

10             THE COURT:  No. 20 is a Grade B?

11             MS. VOGEL:  Correct.

12             THE COURT:  Specification 20 has a guidelines ranges

13   of 18 to 24 months.  Specifications 19, 21 and 22 are Grade C

14   violations, and they have a guidelines range of 7 to 13 months.

15             The maximum sentence is 24 months, and I'm certainly

16   free to reimpose a term of supervised release of up to life,

17   correct, Mr. Greene?

18             MR. GREENE:  Yes, your Honor.

19             THE COURT:  Does anybody disagree with what I just

20   said about the maximum penalties available to me?

21             MR. SEIDLER:  No, sir.

22             MS. VOGEL:  No.

23             THE COURT:  So I think what we'll do is I'll first

24   hear from the lawyers.  There are no victims who wish to be

25   heard in court, correct?

1          MS. VOGEL:  That's correct, your Honor.

2          THE COURT:  If they were here, they would have a right

3     to be heard, Mr. Feagins, but they're not here, so I'll rely on

4     what they wrote that has been docketed.

5          I will hear from Mr. Seidler first, and then hear from

6     Ms. Vogel, and then I'll then hear from Mr. Greene, and then

7     after that I'll finally give you an opportunity to address the

8     court if you would like, Mr. Feagins.  You're not required to,

9     but you have a right to speak, and I'll give you that

10    opportunity after I have heard from the lawyers and from

11    probation, okay?

12          If you have any questions or if you have difficulty

13    understanding, of course, let me know.  I want to make sure you

14    follow this and your mother is able to follow this and

15    everybody is able to follow what is going on here in court.

16    This is a very important day and we're in no rush.  I want to

17    make sure we do it carefully, thoughtfully and thoroughly, all

18    right?

19          So, Mr. Seidler, I have read the submissions you have

20    made, and so I am happy to hear anything else you would like to

21    say.

22          MR. SEIDLER:  Well, your Honor, it is a difficult

23    case.  In many ways, it is kind of an ugly case.  If I could

24    peel that away for a moment and tell your Honor that from the

25    very beginning, Mr. Feagins has always discussed with me and

1   admitted with me and ultimately admitted to the court that what

2   he did was meanspirited, immature.  He got into a

3   back-and-forth with Ms. Landson, didn't control the situation,

4   lashed out and was spiteful.

5           I'm not going to get into the implication of coercion,

6   but I am not going to blame the victim, but, your Honor, the

7   focus of Mr. Feagins' attention while he has been incarcerated

8   is:  A, what he did to himself and what he did to Ms. Landson,

9   but even more strongly, his conduct, your Honor, has had a

10  terrible impact on his mother, and selfishly he wasn't thinking

11  of his mother when he engaged in this electronic or digital

12  correspondence and messages with other people.

13          His mother, your Honor, suffers from diabetes, has had

14  a leg amputated, toes amputated, and Mr. Feagins was supposed

15  to be there to help her get through these difficulties and

16  medical problems, and instead he sits here in a blue outfit in

17  jail once again because he wasn't able to properly think

18  through the situation and control his temper.

19          But, you know, for whatever it is worth, in the five

20  or six months that I did represent Mr. Feagins, despite what he

21  did and despite his temper, he is a terribly bright, well

22  spoken -- I am not going to say young man, but he is in his

23  30's now, who has a lot of potential, who in my estimation

24  could do just about anything he sets his mind to, and we have

25  talked about this at length.

 1          I think at this point in his life, he realizes that he

 2   is not supposed to be in jail, and being in jail is a waste of

 3   his life and that he needs finally to grow up and make

 4   something of himself and to help his mother who has given so

 5   much to him.

 6          I know, your Honor, it is customary for defense

 7   counsel to always get up and say, "Judge, give him the

 8   minimum."  I just don't think in this case the maximum is the

 9   fair penalty for Mr. Feagins.  He desperately wants to make

10   something of his life, and being in jail for this frankly

11   stupidity is not going to get him there, and he knows that.

12          In fashioning a sentence, your Honor, I would ask the

13   court to also take into consideration that he has really been

14   in jail since the very end of April or May in state custody.

15          THE COURT:  May 2 is what we had talked about.

16          MR. SEIDLER:  May 2 is when they picked him up in that

17   matter.  They restored him to parole because the complainant

18   basically wasn't cooperating with the state parole.  He has

19   been in jail since that period of time.

20          THE COURT:  I don't know if he has credit for that as

21   part of the state term or not.  That is still not clear to me.

22   I was going to ask Mr. Greene about that.  Maybe he has some

23   thoughts.  As far as you understand it, is the Bureau of

24   Prisons going to credit the time between May 2 and July 11th?

25          MR. GREENE:  I don't believe so, your Honor.

1          Typically when they're serving a sentence of some

2    other kind for parole or local arrest, if that is being served

3    and credited to some other kind of sentence such as the parole

4    sentence, it wouldn't go towards the violation.

5          MR. SEIDLER:  That is my understanding, too.  The

6    place where he is first arrested, they're not going to give him

7    time.

8          THE COURT:  He wasn't separately prosecuted, so it is

9    complicated by the fact he was on supervision, he was on

10   probation or parole, I forget which, so in lieu of prosecuting

11   him, I guess they revoked that and restored that and then it

12   terminated on its own steam.

13         MR. SEIDLER:  Correct.

14         THE COURT:  He was termed-out.  It seems as though his

15   incarceration after May 2 up until July 11th I think counted

16   towards his state parole.  If that is the case, he wouldn't get

17   credit for it in the Federal Bureau of Prisons.  I think we all

18   have the same understanding, but it is not a hundred percent

19   clear to me because this is a violation as opposed to a crime

20   he was charged on and convicted and sentenced on.

21         MR. SEIDLER:  I am not going to go on and on.  I know

22   Mr. Feagins will want to address your Honor as well.  I would

23   just emphasize that in dealing with Mrs. Feagins and Darnell,

24   on behalf of their relationship at this point, the main

25   relation is focused how he failed his mother and the harm he

IBKJFEAS                         Sentence

1   has caused to Ms. Landson by his rather immature and

2   inconsiderate and crude behavior.

3            Thank you, your Honor.

4            THE COURT:  Thank you, Mr. Seidler.  Ms. Vogel, is

5   there anything you would like to say?

6            MS. VOGEL:  Thank you, your Honor.

7            So the defendant's conduct, which is the unlawful

8   surveillance and dissemination of that video, is truly

9   egregious conduct and a serious breach of the court's trust.

10  For that reason, there is really no justification or excuse for

11  such offense conduct.  It caused real harm to real victims.

12  Filming anyone in an intimate sexual act without consent is

13  bad, and the person in that moment engaged in the sexual act is

14  really at their most vulnerable.

15           Choosing to share that film is even worse, and sharing

16  it to numerous people who are particularly close to the victim

17  to maximize the embarrassment and harm to her is really even

18  worse than truely egregious.  His conduct shows that he

19  intended to maximize the harm to the victim and her wife by

20  sending this video to numerous people.  It was deliberate and

21  it was callous and it really shows he went out of his way to

22  increase the harm.

23           I also think there is a need for specific and general

24  deterrence here.  The defendant has already been sentenced to

25  two years previously for criminal sexual act in the state.  He

1    was also previously sentenced to 27 months for failure to

2    register as a sex offender, so here the government is seeking a

3    sentence at the high end of the guidelines, which would bring

4    the highest -- the high end is 24 months, and that is

5    comparable to the time he has already been sentenced to, so

6    really it would be appropriate here given that the prior

7    sentences that he received have not deterred him not only from

8    additional criminal conduct, but additional criminal conduct

9    that is sex-related.  It really shows the defendant has an

10   issue here with this particular type of criminal conduct.

11          On top of that, the defendant was engaged in sex

12   offender treatment during this time when he was engaged in this

13   conduct, and he was both on supervision for parole with the

14   state and on supervision for probation with the federal

15   government, so lots of supervision while he conducted this

16   behavior, and it really shows a need for deterrence in this

17   case.

18          With respect to general deterrence, I think there is a

19   need to send a strong signal to society that this kind of

20   behavior is not to be tolerated.  It is something that has

21   become more prevalent with the use of social media and the ease

22   with which sexual acts can be filmed given that cell phones and

23   all have cameras are ubiquitous, everyone has one at this

24   point.  It is serious conduct that the court should send a

25   signal to society as well this kind of behavior is not to be

1    tolerated.  Unless the court has questions, that is all I would

2    like to say.

3          THE COURT:  All right.  No, I have no further

4    questions.  All right.  Mr. Greene, is there anything you would

5    like to say?

6          MR. GREENE:  Your Honor, I would just echo some of the

7    government's sentiments in relation to specific deterrence

8    needed for Mr. Feagins at this point.  Defense counsel pointed

9    out that the impact and the toll this has taken on Mr. Feagins'

10   mother, but left out the incredible impact this has left on the

11   victims, who I have personally spoken to, looked into their

12   eyes and felt the pain that they have endured based on Mr.

13   Feagins' actions.

14         This was, as your Honor mentioned, a breach of trust

15   on numerous levels to the Court, New York State Parole, to our

16   Office, a certain level of deception.  People registered as sex

17   offenders are not supposed to have Facebook accounts.  Any

18   social media accounts are supposed to be registered with the

19   New York State Sex Offender Bureau.  Again deterrence is

20   needed.

21         There was a discussion in terms of Mr. Feagins' lack

22   of control, but he was able to hold down a steady job.  He was

23   able to report as required.  He was able to attend sex offender

24   treatment.  Unfortunately, instead of focusing on his efforts

25   on rehabilitation, he focused on more predatory motives and he

IBKJFEAS                          Sentence

1    victimized a lot of young people.

2           THE COURT:  With respect to supervised release, an

3    additional term of supervised release, do you have a

4    recommendation?

5           MR. GREENE:  We recommend continued supervised

6    release, your Honor.

7           THE COURT:  For how long?

8           MR. GREENE:  I think another five years would be

9    appropriate, your Honor.

10          THE COURT:  Any additional terms beyond those

11   previously imposed?

12          MR. GREENE:  Not in addition to those added by your

13   Honor in a previous modification.  However, I think we also

14   would request if Mr. Feagins has electronic devices with

15   internet capability, that that be monitored.

16          THE COURT:  That that be?

17          MR. GREENE:  Monitored.

18          THE COURT:  Should I just bar him from having those to

19   begin with?

20          MR. GREENE:  Yes, your Honor.

21          THE COURT:  Are you asking me to do that?

22          MR. GREENE:  Well, we're not asking your Honor that at

23   this point.  I think access to the internet seems to be almost

24   a necessary requirement of daily life at this point, and again

25   our purpose is rehabilitation.  If we can teach someone to use

1   these tools responsibly, that would be our ultimate goal.

2          THE COURT:  Thank you.

3          Mr. Feagins, is there anything you would like to say?

4   I have read your letter.  I can rely on that.  If there is

5   anything else you would like to say, I am happy to hear from

6   you.

7          THE DEFENDANT:  Yes, sir.  I would like to say I take

8   full responsibility for my actions.  What I did was petty,

9   unkind, foolish.

10         THE COURT:  Petty, foolish and -- I didn't hear the

11  last part?

12         THE DEFENDANT:  I said petty, foolish, unkind.  I

13  understand the severity of everything that occurred.  I

14  understand what I did to the family and myself as well and it

15  has taken a toll on my family as well.  I take accountability

16  for my actions, sir.  Thank you.

17         THE COURT:  Thank you.

18         Let me tell you the sentence I intend to impose and my

19  reasons for it.  In our system of justice, Judges have to

20  explain themselves.  They have to give reasons.  I think that

21  is a good thing.  I think it is important that a defendant or a

22  supervisee understand why the judge imposed the sentence that

23  he or she did.  I don't think a defendant should have to

24  wonder.  I don't think the defendant's family should have to

25  wonder, nor should the victims or the public at large.  As I

IBKJFEAS                    Sentence

1    said, this is a public courtroom, so anyone can come in and

2    watch these proceedings.

3           It is important that the Court, the Judge explain

4    himself in articulating why the sentence imposed is the

5    appropriate one.  Sentencing is hard.  Sentencing is the

6    hardest thing I do not intellectually, but as a matter of

7    exercising judgment, and the impact of the sentence is so

8    profound that it is something that I think most Judges worry

9    about.  They lie awake at night thinking about it, which is

10   probably as it should be because it should never be easy.

11          Imposing a sentence of incarceration on another human

12   being, to take liberty from a person is a very, very serious

13   thing, and so the Judges I know -- and certainly I myself --

14   take this very, very seriously.

15          So I look at you and I say some of what Mr. Seidler

16   says I don't agree with.  You strike me as a bright guy, strike

17   me as somebody who has talents and worked and have the capacity

18   to work and to succeed professionally.  A lot of people don't

19   have that.  I sentence people who don't have nearly the skills

20   or just the raw intelligence you have, and their options as a

21   result are limited.  That in part in some ways accounts for

22   their criminal conduct, they keep crawling back to criminal

23   activity because they find it very difficult to find gainful

24   employment because they don't have the skills or the talents

25   that you have.

1          I look at your mother here, and she is suffering with

2   you.  I understand that, but you have somebody who cares about

3   you, somebody who taught you right from wrong, who supported

4   you, who worries about you and for you, and that is something

5   that not every defendant has, either.  In some ways it is a

6   good thing for you, it shows you have a support system, you

7   have people who care about you, and that is good.  It provides

8   a safety net that can be helpful in the future.

9          At the same time, it kind of underscores how

10  inappropriate this is because you knew better.  We have talked

11  about how this has an impact on your family and, of course, it

12  does, but you should have understood that.  To be prosecuted

13  for, violated on the conduct that we have here, it should be a

14  source of embarrassment to you and obviously is a source of

15  embarrassment to your mother and to your family.

16         This is really bad conduct, and you should know

17  better.  You should know better.  The other thing, of course, I

18  have to consider is your own personal history.  This is not

19  your first time facing a Judge.  You're in Criminal History

20  Category V.  You have a lengthy record of prior convictions,

21  prior involvement with the criminal justice system going back

22  to when you were quite young, but a lot of it involved

23  violence, just outright violence and reckless, high-speed

24  chases, assaulting people, punching people in the face.

25         Then, of course, was the sexual offense in which you

perpetrated basically a rape of somebody.  That's an incredibly

serious crime.  That is what required you to register as a sex

offender in the first place, which you didn't do, and you

absconded and it compounded the problem.  That has been a

recurring problem as well.

          To finally be on supervised release and to be getting

your life in order and to do this, I don't know what to think.

It seems to me you're a person who, notwithstanding the fact

you're smart and talented, you just lack any kind of control,

and I don't know what that means for the future.  It concerns

me that you're dangerous, you're dangerous to innocent people,

and so that weighs on me a great deal also.

          It seems to me the sentences imposed thus far have not

had an impact on you.  I don't know why that is because you're

smart enough to understand, but you don't seem to be able to

follow through.  Then there is the seriousness of this conduct.

          This is, to call it heavy, unkind and foolish is

really to understate what this was.  This was an act of

incredible abuse.  This is, in essence, a kind of terrorism.

You did this.  You posted this video in order to terrorize, to

inflict maximum emotional damage on someone for not complying

with your will and to then further inflict it on people close

to her.

          Her spouse, her closest family members and friends,

the impact that this has had on the victim is discussed in the

IBKJFEAS                    Sentence

1    letter.  It is a sealed letter, but presumably you have seen it

2    and you understand that this is still a source of incredible

3    trauma to this individual and to those around her.  It wasn't

4    just unkind.  It was cruel.  It was violent in a very real

5    sense.  It was something that you of all people can't be doing

6    and you know is not allowed to have social media accounts.

7    Providing information about it to Probation is really I think

8    compounds the problem.  You're someone who is unwilling to be

9    supervised and unwilling to abide by the law and the conditions

10   of supervised release.

11         I don't say that with any satisfaction.  I am not here

12   to wag my finger at you and lecture you, but I have to give

13   reasons and this is really a case just unlike any I have really

14   seen in terms of just enormity of misconduct and cruelty and

15   the impact it has had.

16         So in light of all of that, I have to say I have very

17   little hesitation in imposing 24 months.  That is the maximum

18   sentence I can impose.  If I could impose more, I would.  I

19   can't do that.  That is the maximum I can impose, so I will

20   impose that.  I am also going to impose supervised release for

21   a lifetime because I just think the consequences here are too

22   great if you are left unsupervised.

23         I am going to impose the conditions that were

24   previously in place as well as some others.  First of all, you

25   will have to register as a sex offender.  You have to do that

as a condition of supervised release.  You have to comply with

that.  If you don't, it is a crime and you will be prosecuted

separately and you will be back in front of me and you will be

violated and sentenced again on this case.  There are mandatory

conditions that you may not commit another federal, state or

local crime of any kind, you may not use or possess any kind of

controlled substance, you have to participate in the collection

of DNA as directed by Probation.

There are 13 standard conditions.  I will impose those

here.  Amongst those is that you may not possess a firearm of

any kind.  Then there are special conditions I will impose

here.  That includes you will not engage in any social media,

so no posting and Tweeting, no Facebook accounts.  If you have

such accounts, you must disclose all of them to the probation

officer.  You are not to have any such accounts, and all of

your electronic devices have to be monitored by Probation to

make sure you are not utilizing social media or electronic

devices in a way that is inconsistent with your supervised

release or in any way consistent with the conduct that you have

admitted to here.

You will be subject to a search of your residence,

your place of business, your vehicle, your electronic devices,

phones, laptops, iPads, anything like that, your person, and in

the event that Probation believes there is evidence of a crime

or evidence of a violation of supervised release, you must

IBKJFEAS                    Sentence

1    consent to that search.  You can't defy it.  You have an

2    obligation to advise any adults with whom you share these

3    premises, let them know you're subject to this search

4    requirement so they can take steps to protect their own privacy

5    and their own property.  You're obliged to do that.

6          I will direct you provide any and all requested

7    financial information to the probation officer.  You will not

8    be permitted to open any lines of credit, credit card accounts,

9    bank loans, mortgages, any lines of credit at all unless

10   Probation is notified in advance and approves.

11         I am going to order that you participate in mental

12   health treatment that will include anger management.  That

13   treatment will be provided by a treatment provider approved by

14   Probation.  You are to comply with all of the conditions and

15   requirements of that treatment.  That will include group

16   sessions, it will include appearing as directed and may include

17   testing to see if you're using any kind of drugs.  I will

18   permit that testing.

19         I will also permit the treatment provider to share

20   information with Probation and Probation to share information

21   with the treatment provider.  To the extent you can afford to

22   cover the cost of that treatment, I am going to ask you to do

23   that.  If you're working, you have access to insurance, you

24   have access to other forms of support for the program, I will

25   ask that you help defray the costs.  If not, the court will

1    bear the costs because I think it is important you get this

2    treatment.  Those are the conditions.

3           Is there anything else beyond that you would like me

4    to impose?

5           MR. GREENE:  Your Honor mentioned mental health

6    treatment and anger management and sex offender treatment.

7           THE COURT:  That is mandatory for sex offenders.  That

8    is explicit.  That is already part of this supervision.  So

9    that is the sentence.

10          Is there Any legal impediment to my imposing that

11   sentence?

12          MS. VOGEL:  Not that I am aware of, your Honor.

13          MR. SEIDLER:  I have no legal impediment.  If I could

14   just make a statement.  I think imposing a lifetime supervised

15   release -- I think it should be evaluated from time to time.

16          THE COURT:  It can be.  It can always be revisited.

17   There is a petition to reduce it.  After five or more years of

18   good compliance, I might be open to that.  It is not designed

19   to be vindictive, but this conduct on the heels of a failure to

20   register as a sex offender, on the heels of a state conviction

21   for a sexual offense involving minors is so unfathomable to me

22   that I won't take the risk at this point.

23          There is also the possibility with future conduct and

24   compliance will come an opportunity to seek a modification.

25   That is not off the table, but at this point I am going to need

IBKJFEAS                    Sentence

1   to see some real signs of turnaround before I would entertain

2   that.

3           MR. SEIDLER:  I didn't want to see a 50-year-old man

4   who has exercised good behavior for 20 years continue to pay

5   for mistakes --

6           THE COURT:  I see that and I will be open to those

7   arguments if we get there.

8           MR. SEIDLER:  Thank you.

9           THE COURT:  So there are open counts or open

10  specifications of violations?  Some are very serious, even more

11  serious than the ones admitted to.  I have not sentenced on the

12  basis of those because they have not been proven or admitted.

13          Those will be dismissed, correct?

14          MS. VOGEL:  That's correct.

15          THE COURT:  I will dismiss the open counts.  I should

16  tell you, Mr. Feagins, you have the right to appeal this

17  sentence if you wish to.  To the extent you wish to appeal, you

18  need to file a notice of appeal within two weeks.  Talk to Mr.

19  Seidler about that.  He will assist you in filing a notice of

20  appeal.  Mr. Greene, is there anything else you would like the

21  court to cover today?

22          MR. GREENE:  No, your Honor.

23          THE COURT:  I am happy to restate the sentence.

24          MR. SEIDLER:  It is not necessary.

25          THE COURT:  Is there any recommendation you like me to

1   make with respect to where Mr. Feagins would be housed, Mr.

2   Seidler?

3           MR. SEIDLER:  It is going to be difficult for his

4   mother to travel anywhere, but certainly further away makes it

5   impossible.  I think for her benefit and for his benefit, if he

6   can be as close as possible to New York City to have

7   visitation.

8           THE COURT:  I will make that recommendation.  I can't

9   order it, but I will recommend it.  Mr. Feagins, good luck to

10  you.  I do hope that this is the last time you're in a

11  courtroom, certainly the last time you ever do anything,

12  anything approaching the conduct that got you here.  I hope you

13  will reflect on it and realize how destructive it was and awful

14  it was and people are still going to be dealing with that for

15  many years as a result of your cruelty and bad judgment.  Think

16  about that, too.  Thanks very much.

17          Let me thank the Marshals and thank the Court Reporter

18  as well.

19          (Court adjourned)

20

21

22

23

24

25