

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 17, 2023

**BY ECF AND EMAIL**
The Honorable Richard J. Sullivan
United States Circuit Judge
Second Circuit
40 Foley Square
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

    Re:  *United States* v. *Darnell Feagins*, 17 Cr. 377 (RJS)

Dear Judge Sullivan:

    Defendant Darnell Feagins is scheduled to appear before the Court on January 20, 2023, at 10:00 a.m. in this violation of supervised release proceeding.  The Government expects that the defendant will admit to Specifications 4, 6, and 8 of the amended violation report dated December 13, 2022 (the "Violation Report").  If the Court wishes to proceed to sentencing on January 20, the Government is prepared to do so.  For the reasons that follow, the Government respectfully submits that the Court should impose a sentence of 24 months' imprisonment, follow by a new term of lifetime supervised release.

    **I.**    **Factual Background**

    A.  Procedural and Criminal History

    On January 4, 2012, the defendant pled guilty to endangering the welfare of a child, a class A misdemeanor, in violation of N.Y.P.L. § 260.10(01), and criminal sexual act in the second degree, a class D felony, in violation of N.Y.P.L. § 130.50, in New York Supreme Court, Kings County.  The facts of that case are as follows: on September 7, 2011, the defendant, who was 24 years old at the time, put his hands on the victim's vagina under her clothes, slapped her on the face, held her hands together, and pushed her back on the bed as she struggled to break away, at which point the defendant pulled down the victim's pants and underwear and inserted a finger into her vagina, put his mouth on her vagina, attempted contact between his penis and her mouth, and touched her breast.  (Presentence Investigation Report, dated Aug. 4, 2015, *United States v. Darnell Feagins*, No. 4:15 Cr. 15 (CDL)(MSH)).  The defendant was sentenced to one year of imprisonment on the first charge and two years of imprisonment on the second charge, followed by five years of supervision.  At the time of this conviction, the defendant became subject to sex offender registration.

    On July 15, 2013, the defendant was released from prison and placed on parole.  On July 22, 2013, the defendant completed a "Sex Offender Change of Address" form that indicated he

would reside in Brooklyn.  The defendant then absconded from parole supervision, and on October 1, 2013, a parole violation warrant was issued for his arrest.

In July of 2014, the New York Department of Corrections received an anonymous tip that the defendant was living at a specific residence in Columbus, Georgia.  During the course of the U.S. Marshals' investigation, several witnesses confirmed the defendant's presence at the residence in Columbus, Georgia over the preceding months.  In addition, law enforcement learned that the defendant had never registered as a sex offender in Georgia, and a second local warrant for failure to register as a sex offender was issued.  Ultimately, on August 15, 2014, the defendant was arrested at a residence in Opelika, Alabama, after he was found hiding on a balcony at the residence.

On March 12, 2015, a federal grand jury in the Middle District of Georgia indicted the defendant for failure to register as a sex offender in Georgia, in violation of 18 U.S.C. § 2250(a).  On May 14, 2015, the defendant pled guilty to the single count indictment, and on August 14, 2015, the defendant was sentenced to 27 months' imprisonment, to run consecutively to any sentence imposed by the New York Supreme Court in Kings County for the defendant's violation of parole.  In addition, the defendant was sentenced to five years of supervised release, which included the special condition that the defendant participate in a program to complete his GED.

On July 29, 2016, the defendant was released from federal custody to the custody of the New York Department of Corrections to address the violation of his parole.  On November 29, 2016, he was released from the custody of New York Department of Corrections to continue his state term of supervision and start his federal term of supervision.  The defendant, however, never reported to federal supervision.  On April 26, 2017, Probation at the Middle District of Georgia learned from the New York State Department of Corrections and Community Supervision that the defendant was residing at the Willow Men's Shelter on 781 East 135th Street, Bronx, New York.

On June 15, 2017, the defendant's federal supervision was transferred to the Southern District of New York and to Your Honor.  On June 21, 2017, on the recommendation of Probation and the consent of the defendant, Your Honor modified the conditions of the defendant's supervised release to add sex offender treatment, a search condition, and a prohibition that the defendant interact with minors.

On May 2, 2018, the defendant was arrested for violating his state parole, and he was detained.  The defendant was found to have violated his state parole by using Facebook without the parole officer's permission.  The defendant's parole supervision expired on July 15, 2018.  On July 12, 2018, the defendant was transferred to federal custody in connection with a violation report that included 22 specifications.  On August 28, 2018, the defendant admitted to the following four specifications: (1) harassment in the second degree, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 240.26; (2) unlawful surveillance in the second degree, a class E felony and grade B violation, in violation of N.Y.P.L. § 250.45(5); (3) dissemination of an unlawful surveillance image, a class A misdemeanor and grade C violation, in violation of N.Y.P.L. § 250.55; and (4) unlawful disclosure of an intimate image, a grade C violation, in violation of New York City Law 10-177.

Hon. Richard J. Sullivan  
January 17, 2023

Page 3

      As the Court knows, these specifications arose out of an incident in the first few months of 2018 in which the defendant recorded a victim performing oral sex on the defendant without the victim's knowledge or consent. In April 2018, the defendant sent the video to the victim's friends and family via Facebook, accompanied by taunting and sexually explicit messages.

      The Court sentenced the defendant to 24 months' imprisonment—the maximum permissible term of imprisonment—plus lifetime supervised release. At the time of sentencing, the Court noted that the defendant "lack[s] any kind of control" and was "unwilling to be supervised and unwilling to abide by the law and the conditions of supervised release," and the Court was concerned the defendant was "dangerous to innocent people." Tr. 17-8 (ECF No. 34). On appeal, the Second Circuit affirmed the sentence as procedurally and substantively reasonable.

      B.  <u>The Current Violation of Supervised Release and No. 20 Cr. 218</u>

      On March 19, 2020, a grand jury in this district indicted the defendant with one count of possession of child pornography in *United States v. Darnell Feagins*, No. 20 Cr. 218. The indictment concerned child pornography recovered from the defendant's cellphone ("Cellphone-1"), taken from the defendant on May 8, 2018, at the time of his arrest for the state parole violations, which ultimately led to his prior violations of federal supervised release. Cellphone-1 contained approximately 1,243 files containing child pornography depicting prepubescent victims. A forensic review of Cellphone-1 showed that the defendant, using special software, had wiped essentially all contents of the phone prior to his arrest, including the child pornography material, but law enforcement was nevertheless able to recover child pornography and limited other information through forensic analysis. Forensic analysis further showed that the defendant stored and/or accessed the child pornography material using "hidden calculator" type applications designed to look like a calculator application but which unlock access to otherwise hidden material once the user enters a code. In addition, further forensic analysis showed that the defendant downloaded at least some of the child pornography material from various websites and that at least some of the images were downloaded as early as in or about November 2017.

      At the time grand jury returned the indictment, the defendant was at a half-way house finishing the 24-month term of imprisonment. Because of the start of the COVID-19 pandemic, law enforcement was not able to arrest the defendant in March 2020, and Feagins began his new term of lifetime federal supervised release in mid-March 2020. As described in the Violation Report, on June 17, 2020, the defendant's supervising probation officer found that the defendant possessed a cellphone on which he had downloaded social media applications, in violation of his supervised release conditions. By June 30, 2020, the defendant absconded from supervised release. On October 7, 2020, the U.S. marshals located the defendant in the Bronx and arrested him. Law enforcement recovered a cellphone from the defendant incident to arrest ("Cellphone-2"). Pursuant to a search warrant, law enforcement found 41 videos and 41 images of child pornography depicting prepubescent females on Cellphone-2.

      The defendant has been detained since his arrest in October 2020. On December 8, 2022, the defendant pled guilty to a superseding information that charged the defendant with possessing child pornography in connection with Cellphone-1 and Cellphone-2, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), which carries a ten-year mandatory minimum sentence. The defendant is scheduled to be sentenced by the Hon Andrew L. Carter Jr. on March 9, 2023.

## II. Applicable Law and Analysis

When a defendant violates the conditions of his supervised release, a court may revoke the term of supervised release and impose a term of imprisonment after considering the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 18 U.S.C. § 3583(e)(3). Here, because the defendant was originally convicted of a Class C Felony, the maximum term of imprisonment the Court can impose is two years. *Id.* The Government anticipates that the defendant will admit to Specifications 4, 6, and 8. The applicable range of imprisonment pursuant to the U.S. Sentencing Guidelines is 18 to 24 months (the "Guidelines Range") because Specification 8 to which the defendant admitted is a Grade B violation and because the defendant is in Criminal History Category V. U.S.S.G. § 7B1.4.

The "primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States* v. *Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

The Government requests that the Court impose a sentence of 24 months' imprisonment plus lifetime supervised release. By possessing a cellphone in violation of his supervised release conditions, absconding from supervised release, and possessing child pornography during his new life term of supervised release, the defendant has continued to demonstrate a clear disregard for court-ordered supervision and the law. The defendant had barely commenced his new term of supervised release before committing these violations, further emphasizing the defendant's complete disdain for Probation's supervision and the law. Particularly troubling is the fact that the defendant continues to commit sex-related crimes, showing he remains a danger to the community, just as the Court observed at the previous violation of supervision release sentencing. Moreover, multiple prior significant terms of incarceration, including the recent 24-month term of imprisonment, have failed to deter the defendant from further criminal conduct. The defense highlights various mitigating factors in the defendant's personal history, and the Court should take those into account. But, the danger the defendant poses to the community, combined with the defendant's demonstrated unwillingness to abide by the law or supervision, outweighs these mitigating factors. The proposed sentence is thus necessary to reflect the seriousness of the defendant's violations, to afford adequate deterrence to the defendant, and protect the public form further crimes of the defendant.

Hon. Richard J. Sullivan  Page 5
January 17, 2023

### III.    Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 24 months' imprisonment, followed by a new term of lifetime supervised release.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Cecilia E. Vogel
Assistant United States Attorney
(212) 637-1084

cc: Zachary Margulis-Ohnuma, Esq. (by ECF and email)
   U.S. Probation Officer Hillel Greene (by email)