# ZMO Law PLLC

April 18, 2023

*Via ECF*

Hon. Richard J. Sullivan
Southern District of New York
United States Court of Appeals for the Second Circuit
500 Pearl Street
New York, NY 10007

     RE: *U.S. v. Darnell Feagins*, 17-cr-377 (RJS) (Violation of Supervised Release)

Dear Judge Sullivan:

This office represents Darnell Feagins in the above-captioned matter. We write with respect to the evidence adduced by the government at the evidentiary hearing held on March 28, 2023 in support of the eight specifications set forth in the Amended Violation Report dated December 22, 2022 ("AVR").

In brief, we respectfully submit that:

(1) Specification #1 should be dismissed because the government did not prove that Mr. Feagins violated New York Corrections Law 168-f with respect to the [egenius205@gmail.com](mailto:egenius205@gmail.com) email address since he was not required to register that address;

(2) Specification #2 should be dismissed because the government did not prove that Mr. Feagins violated New York Corrections Law 168-f by failing to register a new residential address within ten days of leaving the shelter on Creston Avenue because he was not required to register until he established a new address;

(3) Specifications #1 and 2 should be dismissed because, even if he was required to register the email address and a new residential address, there was no evidence that he failed to register them with the New York State Division of Criminal Justice Services;

(3) Specification #8 should be dismissed because the government violated the plea agreement it signed on December 8, 2023 in *U.S. v. Darnell Feagins*, S1 20 Cr. 218 (ALC), which provided that the government would not further criminally prosecute Mr. Feagins for possession of child pornography from November 2017 to October 2020.

These points are further explained below.

353 Lexington Avenue, Suite 900 • New York, NY 10016
(212) 685-0999 • info@zmolaw.com
www.zmolaw.com

ZMO Law PLLC

1. **Darnell Feagins did not violate New York's SORA requirement to register "internet identifiers" because he never used the egenius205@gmail.com account for any purpose other than to activate a phone.**

Specification #1 alleges that Mr. Feagins violated the terms of his federal supervised release by violating the New York Sex Offender Registration Act ("SORA"), Corrections Law Article 6-C, § 168-f by failing to register an email address, egenius205@gmail.com, he created on April 22, 2020. AVR at 3. Assuming the Court is satisfied that the government has proven that Mr. Feagins created this email address, the government has nonetheless failed to prove that Mr. Feagins violated state law because (1) he was not required to register that email address and (2) the government presented no proof that he failed to register the address with the state Division of Criminal Justice Services as required under the statute.

Section 168-f(4) provides in pertinent part (emphasis added):

> **Any sex offender shall register** *with the division* **no later than ten calendar days after any change of address, internet accounts with internet access providers belonging to such offender,** *internet identifiers that such offender uses,* **or his or her status of enrollment, attendance, employment or residence at any institution of higher education.**

The government appears to believe that by activating a phone on April 22, 2020 with the egenius205@gmail.com internet account, Mr. Feagins caused a "change of internet identifiers that such offender uses[.]" The statute defines "internet identifiers" as "electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar internet communication." Corr. L. § 168-a(18). In other words, the statute specifies that it applies to email addresses that the defendant *uses* to communicate with others, not merely ones that he creates. The government offered evidence that Mr. Feagins *created* egenius205@gmail.com, but it provided no evidence that he *used* that address as the statute requires. *See* Tr. 75-76 (P.O. Greene Testimony); Tr. 114 (FBI Special Agent Spivack Testimony).[1] Accordingly, Mr. Feagins did not violate Corrections Law § 168-f(4). *See People v. Ferretti*, 177 N.Y.S.3d 379 (3rd Dep't Sept. 9, 2022) (establishing and using a Facebook account did not have to be reported to DCJS where "[t]he governing statutes [i.e. § 168-f(4) *et al.*] were written, and have been interpreted, narrowly."), *citing People v. Ellis*, 33 N.Y.3d 582, 586 (2019).

We also note that a broader interpretation of § 168-f(4) could run afoul of the First Amendment as discussed in *Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. April 26, 2022).

---

[1] "Tr." Refers to the transcript of the evidentiary hearing held on March 28, 2023.

4/18/23

Page 2

ZMO Law PLLC

In that case, a Connecticut man who was required to register as a sex offender brought suit challenging a Connecticut provision that required him to notify state authorities in the event that he "establishes or changes an electronic mail address, instant message address or other similar Internet communication identifier." *Id*. at 167, *quoting* Conn. Gen. Stat. § 54-253(b). The Second Circuit concluded that the requirement to disclose internet identifiers merited *at least* intermediate scrutiny under the First Amendment. *Id*. at 170-71. In order for the law to be upheld, the government had to show that "the challenged law advances important governmental interests and is narrowly tailored to those interests." *Id*. at 172. In the case of requiring disclosure of internet identifiers, the Circuit rejected Connecticut's speculative propositions that (1) a person is less likely to commit a sex crime if he is aware that law enforcement is in possession of his internet identifiers and (2) disclosure "allows law enforcement to maintain a database that can be used to determine the identity of someone engaged in online sex offenses." *Id*. at 173. Moreover, the court noted, the government "cannot normally justify a speech restriction by reference to its interest in deterring crime." *Id*. at 174. The district court's dismissal of the First Amendment claim was reversed and the case was remanded for discovery on those issues. Such First Amendment fact-finding is not necessary here because the statute can be construed on its plain language not to cover Mr. Feagins's conduct.

2. **Mr. Feagins did not violate New York's SORA requirement to register a change in address because he never established a new address.**

Specification #2 alleges that Mr. Feagins committed a state crime by failing to register with the New York State Division of Criminal Justice Services within 10 days after any change of address. AVR at 3. However, we respectfully submit that, given the facts adduced at the hearing, Mr. Feagins was under no obligation to register a change in address under New York SORA because there was no evidence that he established a new address. SORA itself does not define the term "change of address" that triggers felony criminal liability in Corr. L. § 168-f. Here, there was no evidence indicating where Mr. Feagins slept or that he maintained an address anywhere after June 30, 2020. *See* Tr. 69-70 (Officer Greene testimony that he does not know where Mr. Feagins moved to after June 30 or if he established a new residence, or where he slept between June 30 and October 7, 2020). Officer Greene never gave Mr. Feagins "permission to reside" somewhere other than the address he had previously registered with DCJS, which was a homeless shelter on Creston Avenue in the Bronx. Tr. 57. Officer Greene admitted that if Mr. Feagins were "couch surfing for …nine days at a time, then those [locations] wouldn't be registrable" since SORA only requires registration of a new address ten days after the change of address occurs. Corr. L. § 168-f(4). Since the government did not prove that Mr. Feagins established a new address somewhere and thereby effected a "change of address," it has not proven a violation of that portion of § 168-f(4).

4/18/23
Page 3

Moreover, the New York Supreme Court Appellate Division, First Department recently held that the term "address" in the statute was unconstitutionally vague as applied to a defendant who was living in the street and could not find a place to live. *See People v. Allen*, 213 A.D.3d 73 (1st Dep't Feb. 22, 2023). "Our decision renders unconstitutional the address registration requirement as applied to homeless sex offenders who, like defendant here, possess no address for their residence. It does not exempt homeless sex offenders who are able to provide an address such as a shelter at which they are staying." *Id*. at 80.

Unless the government has proof that Mr. Feagins was doing something other than "couch surfing" or living in the street, he cannot be held liable for Specification #2. He left the Creston Avenue Men's Shelter at the height of the COVID-19 pandemic, when sleeping in close quarters to others was literally deadly. *See* https://www.coalitionforthehomeless.org/wp-content/uploads/2020/06/COVID19HomelessnessReportJune2020.pdf (mortality rate much higher for homeless people in shelters than for people who were unsheltered). There is no evidence that he ever established a new address of any kind or would have spent summer nights indoors in close quarters to other people. He was arrested in a public place. Accordingly, application of the address registration requirement to him between June 30 and October 7, 2020 would violate the vagueness doctrine and cannot support a separate violation specification.

3. **Even if Mr. Feagins was required to register egenius205@gmail.com or a new address with the Division of Criminal Justice Services, the government failed to present any evidence that he failed to do so because no one checked with DCJS.**

Even assuming *arguendo* that Mr. Feagins's conduct triggered an obligation under Corr. L. 168-f(4) to update his registration information, the government failed to adduce evidence that he did not do so. The statute requires a registrant "to register with *the division* no later than ten calendar days after any change of address [or]…internet identifiers that such offender uses[.]" Corr. L. § 168-f(4) (emphasis added). "The division" is defined in Corr. L. § 168-a(5) as the New York State Division of Criminal Justice Services ("DCJS"). While registering with the NYPD is likely sufficient to communicate the information to DCJS, it is the failure to register with DCJS—not with the NYPD—that is a felony offense under New York Law.

The government elicited testimony from Officer Hillel Greene and an exhibit from the New York City Police Department with information about Mr. Feagins's registration. *See* Tr. 57, 59 (describing GX 4 and receiving into evidence only the first five pages of the proffered exhibit). Officer Greene noted that the NYPD records did not "include any indication that Mr. Feagins was using" the egenius205@gmail.com account. Tr. 61. On cross, Officer Greene explained that "local detectives or sergeants input" the information in GX 4 "into their computer system that they maintain." Tr. 62.

ZMO Law PLLC

But there was no evidence that Mr. Feagins failed to notify the *Division* about a change-in-address or the egenius205@gmail.com email. The only record elicited from DCJS was a single page on file with the NYPD and signed by Mr. Feagins on March 5, 2020, at least six weeks before he allegedly created the egenius205@gmail.com account and months before he moved out of the Creston Avenue shelter. *See* GX 4 at 5. The other records in GX 4 are strictly from the NYPD. No records were received in evidence that were authenticated by or came from DCJS. When Officer Greene was asked if he checked with DCJS, he testified that he could not recall. Tr. 67. Accordingly, the government failed to prove that Mr. Feagins failed to notify DCJS of the egenius205@gmail.com email or any change of address.

4. **The government is estopped from further prosecuting Mr. Feagins for possession of child pornography during the timeframe set forth in Specification #8.**

As the Court is aware, Mr. Feagins pled guilty to possession of child pornography from November 2017 to October 2020 in the case pending before the Hon. Andrew L. Carter. The government offered the minutes of the plea allocution as Exhibit 18. Exhibit A attached hereto is copy of the plea agreement, which was drafted by the government and appears on government letterhead. As such, it should be construed strictly against the government. *See, e.g., U.S. v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018) (because plea agreements are unique contracts, appellate courts temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards, construing plea agreements strictly against the government which is usually the party that drafts the agreement and ordinarily has "certain awesome advantages in bargaining power").

The plea agreement contains a "coverage" paragraph which sets forth in detail the circumstances under which Mr. Feagins can be further penalized for his participation in the crime that was the subject of his guilty plea:

> **In consideration of the defendant's plea to the above offense, the defendant *will not be further prosecuted criminally by this Office* (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for possession of child pornography from November 2017 through October 2020, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq. In addition,**

> at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant.

Ex. A at 1 (emphasis added).

The agreement also provides, in the very last paragraph that "[n]o additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties." In other words, there was no side agreement under which the government reserved the right to prosecute a violation of Mr. Feagins's terms of supervised release based on his guilty plea.

At the time Mr. Feagins entered the guilty plea on December 8, 2022, Specification #8 had not been alleged. It was added to the original Violation Report five days later. *See* AVR (dated December 13, 2022). There was nothing to stop the government—which had full control over the plea negotiations given its ability to increase the mandatory minimum from ten to fifteen years by adding a charge of receipt of child pornography under 18 U.S.C. § 2252A(b)(1) or § 2252(b)(1)—from adding a provision in the agreement that they reserved the right to prosecute a supervised release violation based on the guilty plea. That would have put Mr. Feagins on notice and mirrored the government's reservation of rights to pursue a tax case or to use the guilty plea as a RICO predicate, both of which are set forth in the paragraph recited above. Accordingly, the agreement should be construed against the government and Mr. Feagins is entitled to the benefit of the bargain he made. The government should have been estopped from further criminally prosecuting him by presenting evidence in court that he violated 18 U.S.C. § 2252A from November 2017 through October 2020.

## Conclusion

For the reasons set forth above, we ask the Court to impose a sentence of three months in light of Mr. Feagins' pending sentence of at least ten years imprisonment after his guilty plea.

Very truly yours,

ZMO Law PLLC

By: *Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma

CC: All Counsel (via email and ECF)