# ZMO Law PLLC

May 8, 2023

*Via ECF and email*

Hon. Richard J. Sullivan
Southern District of New York
United States Court of Appeals for the Second Circuit
500 Pearl Street
New York, NY 10007

      RE: *U.S. v. Darnell Feagins*, 17-cr-377 (RJS) (Violation of Supervised Release)

Dear Judge Sullivan:

This office represents Darnell Feagins in the above-captioned matter. We write pursuant to the Court's order dated May 1, 2023 to reply to the government's opposition to Mr. Feagins's post-hearing submission (ECF no. 91, hereinafter "Opp.") seeking to dismiss Specifications #1, 2 and 8 of Amended Violation Report dated December 22, 2022 ("AVR").

**1. The New York statute only criminalizes failure to register an email used for communication, which the government did not prove in this case.**

The government argues that the "plain text" of N.Y. Corr. L. 168-a(18) indicates that *any* email address used in *any* way by a registered sex offender is an "internet identifier" that must be registered pursuant to the New York Sex Offender Registration Act ("SORA"), Corr. L. § 168-f(4). Opp. at 6. The government is mistaken: the text is ambiguous and ordinary rules of statutory construction suggest that the ambiguity should be resolved in favor of the narrower construction.

    **A. The SORA definition of "internet identifiers" is ambiguous.**

The language of the statute can be read at least two ways: the subordinate clause "used for the purposes of chat, instant messaging, social networking or other similar internet communication" could (as the government urges) modify either only its immediate antecedent, which is "designations," or both parts of the two-item integrated list that precedes it, which is "electronic mail addresses *and* designations[.]" Corr L. § 168-a(18) ("'Internet identifiers' means electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar internet communication."). In ordinary conversation, the modifying clause applies to the whole list of parallel or closely-related items that precede it. *See, e.g., U.S. v. Bass*, 404 U.S. 336, 339-40 (1971) ("natural construction" of clause makes it applicable to three items that precede

353 Lexington Avenue, Suite 900 • New York, NY 10016
(212) 685-0999 • info@zmolaw.com
www.zmolaw.com

ZMO Law PLLC

it, but the argument is "neither overwhelming or decisive" because of the ambiguity in which item is modified by the clause).

The government argues first that there is no ambiguity because "the 'used for' phrase clearly only modifies 'designations' because the 'used for' phrase conspicuously omits email messages in the list of purposes, which would be the primary purpose for 'electronic mail addresses.'" Opp. at 6. But we respectfully submit this in fact cuts the other way. The authors of the statute did not state that only emails used for email had to be registered because that would be redundant; what they said was that only emails used for internet communications needed to be registered. Email addresses can be established for many purposes. For example, if a person established an email address solely to use as a username for a computer (as Microsoft and Apple currently encourage) or to sign in to a bank webpage, that would not be used for communication—and, incidentally, have no bearing whatsoever on an offender's risk of contacting a potential victim via the internet. Accordingly, the legislature omitted email from the list of purposes because it is not the establishment of the email address that they were concerned about, it was the use of an email address or other identifier for purposes of communication with others. The statute is at least ambiguous as to whether the requirement that an identifier be "used for" communication should apply to email addresses in addition to other kinds of identifiers.

### B. Canons of statutory construction support a narrower rule.

Two principles of statutory construction support reading the statute not to apply to email addresses not used for communication with other people.

First, the series qualifier canon provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series," a modifier at the end of the list "normally applies to the entire series." *Facebook Inc. v. Duguid*, 141 S.Ct. 1163, 1169 (2020), *quoting with modification* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* at 147 (2012). Put another way, "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (internal quotations and citations omitted). That is the structure at issue in Corr. L. § 168-a(18): the clause "used for purposes of chat, instant messaging, social networking or other similar internet communication" is applicable to both the first and the last items in the integrated list. *See also United States v. Bass*, 404 U.S. 336 (1971) (holding that, in a statute making it a crime for a convicted felon to receive, possess, or transport in commerce or affecting commerce any firearm, the phrase "in commerce or affecting commerce" applied to receiving and possessing as well as transporting).

The government points out that "the definition of 'internet identifiers' omits a comma after 'designations', [sic] indicating the 'used for' phrase [sic] modifies only 'identifiers' and

ZMO Law PLLC

not both 'electronic mail addresses' and 'identifiers.'" This assertion is puzzling. The lack of any comma appears to bind "electronic mail addresses" and "designations" even more closely together. They are not two separate concepts that are therefore separated by a comma. They are part of an integrated list that is modified by the clause "used for the purposes of chat, instant messaging, social networking or other similar internet communication." In that sense, the language here parallels the language in *Bass*, which also omitted any comma before the modifier, which was nonetheless found to apply to (and limit) all three verbs in the list.

Second, to the extent that the series-qualifier rule does not resolve the ambiguity, the Court should apply the rule of lenity, which counsels strongly for the narrower construction of § 168-a(18). "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). Thus, to the extent the Court believes it is unclear whether the "used for … communication" limitation should apply to electronic mail addresses, "the tie must go to the defendant." *Id*. In other words, because of the uncertainty in the way the legislature drafted its definition of internet identifiers, the rule of lenity indicates that the statute should only apply to email addresses used for communication. This narrow reading is especially appropriate here, where the legislature applied felony criminal sanctions to what appears to be a technical violation of one of many rules governing the conduct of a special class of people, even after their supervised release has ended. The remedial purposes of the statute are amply served by punishing only the use of an email to communicate, not the mere creation of an email for some other purpose. In this case, as noted in *Santos*, the tie should go to the defendant.

### C. The government has not offered any evidence that Mr. Feagins used the egenius205@gmail.com address "for the purposes of chat, instant messaging, social networking or other similar internet communication."

Finally, the government argues that even if the limitation in Corr. L. 168-a(18) applies to email addresses, (1) it was not required to show that Mr. Feagins used the new address to communicate and (2) in any event, Google documents show that Mr. Feagins did use the address to communicate. The Court should reject both these arguments.

As to the first argument, the government asserts that the definition does not require the defendant to *use* the internet identifier for communication, but "merely requires that the 'purpose' of the identifier is to" communicate. Opp. at 6-7. This is a gross misreading of both Corr. L. § 168-f(4), the operative statute that explicitly criminalizes only failure to register "internet identifiers that such offender uses[.]" Thus even if the government is correct that the definition of internet identifiers (in § 168-a(18)) includes emails whose mere purpose is communication, the operative felony statute makes perfectly clear that the email must be *used* in order to liability to attach. In addition, the government's claim

5/8/23
Page 3

ZMO Law PLLC

that "the primary purpose of an email address is to communicate, primarily by sending and receiving emails[,]" is unsupported and untrue in modern uses of information technology. Emails today may serve many purposes, including registering phones, operating systems, and internet accounts. While email addresses are still commonly used to send and receive old-fashioned emails, in this case the email was only used to register a phone. SORA aims to track emails used to communicate, not emails used for other purposes and so does not reach Mr. Feagins's conduct.

After making all these text-based arguments, the government tries to say that, whatever the law, Mr. Feagins used the egenius205@gmail.com email to communicate. Opp. at 7. As a preliminary matter, we ask the Court to disregard new evidence obtained from Google after the government rested its case in Court. *See* Opp. Ex. B. But in any event, the Google records do not provide evidence of any "chat, instant messaging, social networking or other similar internet communication" as the statute requires for liability to attach. The assertion that the records show that Mr. Feagins "accessed the email address" and received automated emails at the address are not supported by any testimony or explanation from Google (or an expert with relevant knowledge). Exhibits 20 and 21 say nothing about "accessing the email address" – they merely report when the phone registered on that email address had a "Recent Successful Android Device Configuration Service Connection[.]" GX 21 at 2; GX 22 at 2. That likely just means the phone was turned on; it certainly does not provide evidence Mr. Feagins used the email address to communicate and therefore committed a felony under New York law. The new exhibit—which is not part of the record and should not be considered—at best shows that some automated emails were sent to that email address. It does not indicate whether those emails were opened. The fact that a machine sent automated emails to an address does not amount to communication and hardly provides proof that Mr. Feagins used that email address for purposes of chat, instant messaging, social networking, or other similar internet communication.

**2. Mr. Feagins did not violate New York law by failing to register a change of address and therefore Specification #2 should be dismissed.**

The government also argues that under *People v. Allen*, 182 N.Y.S.3d 112 (1st Dep't Feb. 22, 2023), the question of whether or not Mr. Feagins was required to register turned on his reason for not providing a new address to the state registry. *See* Opp. at 4-5 ("The defendant's argument fails because the defendant's intention was that no one would find him in order to avoid Court supervision."); *see also* ECF No. 90: Feagins Post-Hearing Letter Brief (hereinafter "Br.") at 4.

But that's irrelevant to the analysis. Although the *Allen* court recited Mr. Allen's unsworn claims that the homeless shelter where he had been staying was dangerous and that he was rebuffed trying to register during COVID, the decision established a clear rule that the

government fails to address: "Our decision renders unconstitutional the address registration requirement as applied to homeless sex offenders who, like defendant here, possess no address for their residence. It does not exempt homeless sex offenders who are able to provide an address such as a shelter at which they are staying." *People v. Allen*, 182 N.Y.S.3d at 117-18. In other words, under the plain terms of *Allen*—which the government concedes controls the decision here—the government was required to prove that Mr. Feagins established a new address by living in one place for ten days or more. There is no evidence that he did so and, therefore, under *Allen* there was no violation of state law that would underpin the specification.

The government is wrong to suggest that this commonsense interpretation of the statute creates a perverse incentive. Sex offender registration, which lasts for life in Mr. Feagins's case, Corr. L. 168-h, is not a substitute for post-release supervision. Unlike supervision, it is not additional punishment for a crime. *Doe v. Cuomo*, 755 F.3d 105, 112 (2d Cir. 2014) (New York Sex Offender Registration Act provisions are not punitive). The registry is not equipped to track each and every daily change in address that a person like Mr. Feagins—penniless and alone—would have experienced at the height of the COVID-19 pandemic. Accordingly, in order to violate Mr. Feagins for committing the additional state crime of failing to register a new address (on top of absconding from post-release supervision and the other alleged violations), the government was required to offer some evidence that he "was able to provide an address" where he was living for ten days or more, *Allen* at 118.

3. **The Court should decline to consider new, unconfronted evidence adduced after the hearing.**

The government presents no authority for its proposition that the Court can re-open the hearing to consider new evidence despite the fact that the government rested. In any even, we respectfully submit the court should decline to do so: the government had ample time to prepare and present its case at the hearing held on March 28, 2023. Indeed, as the Court is aware, the parties had reached a disposition in an effort to avoid this litigation and the government chose to back out of that agreement. *See* 1/20/23 Hearing Transcript at 4 (proposed plea to Specification #4, 6 and 8 "really does cover the scope of the conduct"). The government was given ample time to prepare its case and has virtually unlimited resources of an expert special agent and team of probation officers at its disposal. There is no reason it could not have presented its case with witnesses at the hearing, rather than trying to re-open the case now with documents that were never before presented.

Moreover, the sealed 27-page file submitted by the government, Opp. Ex. C, does not conclusively prove that Mr. Feagins failed to register a change of address or email identifier with the New York State Division of Criminal Justice Services in 2020. Although the affiant claims the file contains a "true and exact copy" of DCJS records, she does not state how the file came into her possession or what steps she took to ensure nothing was missing.

ZMO Law PLLC

Absent cross examination of the witness and timely submission of the file, the Court should not consider it and should find the government has not met its burden of proving that, in the event Mr. Feagins was required to notify the registry regarding the email and a new address, he failed to do so.

### 4. The Court should dismiss Count 8.

The government told Mr. Feagins in a solemn proceeding that, if he agreed to plead guilty to a crime carrying a ten-year mandatory minimum sentence, he would "not be further prosecuted criminally by this office." Opp. Ex. A at 2. The government wrote the agreement. There was no negotiation: the government had extraordinary leverage to coerce Mr. Feagins to accept the agreement by explicitly threatening to indict Mr. Feagins for a crime that carried a *fifteen* year mandatory minimum sentence for the same conduct.

In response, the government argues that having two assistant U.S. attorneys litigate a violation of supervised release does not amount to further criminally prosecuting the defendant. But this is a hyper-technical reading of language the government itself wrote. It was not explained to the defendant in his lengthy plea allocution, *see* Dkt. No. 20 Cr. 218, ECF No. 67 (plea minutes) or highlighted to defense counsel. Based on the government's submission, which cites no case in the context of a plea agreement that bars further criminal prosecution, it appears that this language has never been tested in court. If the government was going to proceed on the new child pornography charge as an additional specification *in addition* to the criminal case, all it had to do was so advise Mr. Feagins. Given the grossly unequal bargaining power and the plethora of other charges in the Violation Memo, we respectfully request the Court exercise its discretion and dismiss Specification 8.

### *Conclusion*

For the reasons described above, we respectfully submit that the Court should find the specifications in the AVR have not been proven by a preponderance of the evidence.

Very truly yours,

ZMO Law PLLC

By: *Zachary Margulis-Ohnuma*

Zachary Margulis-Ohnuma

CC: All Counsel