UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

DARNELL FEAGINS,

Defendant.

No. 17-cr-377 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

The Court is in receipt of a letter from Supervisee Darnell Feagins, dated July 27, 2023, requesting that I recuse myself from this case on the basis that my designation to the district court violates 28 U.S.C § 291(b) and the Appointments Clause of the United States Constitution. (*See* Doc. No. 95.) Specifically, Feagins argues that my designation violates section 291(b) because this assignment is not in the public interest and is not temporary; he also contends that it violates the Appointments Clause because district court judges are principal officers and my service as a district court judge therefore circumvents constitutional appointment procedures. (*Id.* at 2–6.) For the reasons set forth below, Feagins's request is DENIED.

Feagins has failed to demonstrate that my designation to the district court is invalid or that I am otherwise without authority to preside over his case. *First*, Feagins has failed to demonstrate that the orders designating me to the district court violate section 291(b). Section 291(b) authorizes the chief judge of a circuit to "designate and assign temporarily any circuit judge within the circuit . . . to hold a district court in any district within the circuit" when such a designation is "in the public interest." 28 U.S.C. § 291(b). Once designated, a judge must discharge "all judicial duties for which he is designated and assigned." *Id.* § 296. Critically, a defendant does not have a right

to have any particular Article III judge preside over his case. *See United States v. Girolamo*, 23 F.3d 320, 323 (10th Cir. 1994).

Feagins's arguments regarding the invalidity of the designating orders are unavailing. As an initial matter, Feagins does not cite any authority indicating that *recusal* is the appropriate remedy for a purported violation of section 291(b). Nor does Feagins cite any authority for the proposition that a designating order must make a specific finding that the designation is in the public interest. (*See generally* Doc. No. 95.) And there can be no doubt that my continued assignment to this case is reasonable and efficient: I have institutional knowledge regarding this case, imposed the term of supervised release that Feagins is alleged to have violated, and am best situated to determine the breaches of the Court's trust that resulted from these violations.

Furthermore, contrary to Feagins's contention, the designation orders *do* contain a meaningful time limitation – the orders authorize me to sit from October 26, 2018 to December 31, 2023 and for the period of "additional time as may be required to complete unfinished business." (Doc. No. 95-1; Doc. No. 95-2.) This authorization is hardly "open-ended" as Feagins suggests. (Doc. No. 95 at 4.) Rather, the authorization "to complete unfinished business" plainly refers to my continued assignment to those district court cases that were on my docket at the time I was confirmed to the Court of Appeals, which is a longstanding and routine practice in this Circuit. *See, e.g.*, *United States v. Snype*, No. 02-cr-939 (DC), 2023 WL 4622870 (S.D.N.Y. July 19, 2023) (Judge Chin, sitting by designation, granting motion for compassionate release after sentencing defendant in 2004); *Wilson v. United States*, No. 16-cv-4994 (AJN), 2023 WL 4131685 (S.D.N.Y. June 22, 2023) (Judge Nathan, sitting by designation, denying motion to reopen petitioner's case after sentencing him in 2014); *United States v. Kalichenko*, No. 14-cr-95 (JFB), 2023 WL 3688109 (E.D.N.Y. May 25, 2023) (Judge Bianco, sitting by designation, denying

motion for compassionate release after sentencing defendant in 2019); *United States v. Bethea*, No. 05-cr-1234 (DC), 2015 WL 13776431 (S.D.N.Y. Dec. 7, 2015) (Judge Chin, sitting by designation, granting motion for early termination of supervised release after resentencing defendant in 2012); *United States v. David*, No. 90-cr-424 (RR), 2004 WL 7323439 (E.D.N.Y. Dec. 30, 2004) (Judge Raggi, sitting by designation, denying motion for early termination of supervision after amending defendant's sentence in 1994); *Morales v. United States*, No. 95-cv-2413 (JAC), 1996 WL 942428 (D. Conn. Aug. 9, 1996) (Judge Cabranes, sitting by designation, denying petitioner's motion to vacate, set aside, or correct sentence after sentencing him in 1993); *United States v. Roland*, No. 89-cr-341 (PNL), 1995 WL 450493 (S.D.N.Y. July 31, 1995) (Judge Leval, sitting by designation, denying incarcerated defendant's request to be transferred to an intensive rehabilitation program); *Alvarez-Perez v. United States*, No. 88-cr-408 (JMM), 1991 WL 148514 (E.D.N.Y. July 12, 1991) (Judge McLaughlin, sitting by designation, denying defendant's motion pursuant to 28 U.S.C. § 2255); *United States v. Helmsley*, 760 F. Supp. 338 (S.D.N.Y. 1991) (Judge Walker, sitting by designation, denying motion to disqualify himself from ruling on defendant's motion for a new trial); *see also Samson v. N.Y. State Dep't of Transp.*, No. 96-cv-1871 (RSP), 2000 WL 307380 (N.D.N.Y. Mar. 23, 2000) (Judge Pooler, sitting by designation, resolving motions for leave to amend and for summary judgment after hearing oral argument on the motions in 1998); *Cont'l Connector Corp. v. Cont'l Specialties Corp.*, 492 F. Supp. 1088 (D. Conn. 1979) (Judge Newman, sitting by designation, holding that plaintiff was entitled to injunctive relief after presiding over trial). Against this consistent and steady line of cases, Feagins points to no authority or caselaw suggesting that such designations are prohibited under section 291(b), nor has he explained why my continued supervision of Feagins – during a term of supervised release that I imposed (*see* Doc. No. 31) – somehow exceeds the Chief Judge's

authority or amounts to something more than a "temporary" designation for the purposes of section 291(b).

*Second*, Feagins's argument that my designation violates the Appointments Clause is likewise unavailing. Although the Supreme Court has had occasion to consider the practice of temporary designation, it has never called into question the constitutionality of this practice and instead has emphasized the "absolute unsoundness" of the notion that designation "usurp[s] the power of appointment and confirmation vested by the Constitution in the President and Senate." *Lamar v. United States*, 241 U.S. 103, 118 (1916); *see also Glidden Co. v. Zdanok*, 370 U.S. 530, 539–40 (1962) (concluding that constitutional challenge to section 291 ran contrary to statutory language). Courts of Appeals that have considered the question have similarly concluded that temporary designation does not subvert the appointment power. *See, e.g.*, *United States v. Cavanagh*, 807 F.2d 787, 792 (9th Cir. 1987); *Washington v. Jarvis*, 137 F. App'x 543, 547–48 (4th Cir. 2005). And notably, although the practice of sitting by designation is not uncommon, Feagins has not cited a single case holding that this practice is unconstitutional. (*See* Doc. No. 95 at 4–6.) There is therefore no reason to doubt that the designation process set forth in section 291 passes constitutional muster.[1]

Moreover, Feagins has not otherwise stated a valid basis for recusal in this case. A judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see also id.* § 144. In determining whether recusal is warranted, the relevant question is whether "an objective, disinterested observer fully informed of the underlying facts[] [would] entertain significant doubt that justice would be done absent recusal." *United States v.*

[1] *Cf. Heislup v. Town of Colonial Beach, Va.*, 813 F.2d 401 (4th Cir. 1986) (vacating judgment entered by United States Supreme Court Justice William Rehnquist, who sat by designation to hear a trial in the Eastern District of Virginia).

*Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). The Second Circuit has further advised that "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). Importantly, "[l]itigants are entitled to an unbiased judge; not to a judge of their choosing." *Id.*

Feagins suggests that recusal is warranted here because my service "on both the trial and reviewing court . . . risks undermining the rigor and independence with which [my] trial decisions are reviewed." (Doc. No. 95 at 3.) This contention is unavailing. Despite Feagins's arguments to the contrary, temporary designation is not thought to undermine judicial independence or neutral decisionmaking. *See Cavanagh*, 807 F.2d at 792. And, as noted above, this practice is exceedingly common. Because sitting by designation is statutorily authorized and in fact prevalent, no reasonable person could question my impartiality for continuing to supervise Feagins.

Since Feagins has not identified any specific bias, impropriety, or conflict arising from my designation and because his arguments regarding the invalidity of the designating orders lack merit, Feagins's motion for recusal (Doc. No. 95) is denied.

Having determined that recusal is not warranted, the Court now turns to the pending violations of Feagins's supervised release. On January 20, 2023, the Court presented Feagins on eight specifications, as set forth in the Probation Office's amended report dated December 13, 2022. (*See* Doc. No. 83.) Feagins denied all eight specifications (*see id.* at 14–17), and the Court subsequently held an evidentiary hearing (*see* Doc. No. 88). The Court reserved decision and invited the parties to submit supplemental briefing regarding any disputed specifications. (*See id.* at 138–40.)

In his supplemental letter brief, Feagins makes no challenge to Specifications 3 through 7, which allege that Feagins failed to notify his Probation Officer that he left his shelter placement

(Specification 3), downloaded and used applications for social media (Specification 4), circumvented the computer and internet monitoring program by failing to notify his Probation Officer of a cellphone in his possession (Specification 5), failed to report to his Probation Officer as directed (Specification 6), and failed to participate in sex-offender treatment by missing appointments and not contacting his assigned therapist thereafter (Specification 7). At the evidentiary hearing, the government submitted evidence sufficient to establish that Feagins committed each of these violations.[2] In light of this evidence, the Court finds – and Feagins does not dispute – that the government has proven the violations set forth in Specifications 3 through 7 by a preponderance of the evidence.

Feagins *does* dispute Specifications 1, 2, and 8, which he contends should be dismissed. (*See* Doc. No. 90.) The Court will address each in turn.

With regard to Specification 1 – which alleges that Feagins failed to register his email address egenius205@gmail.com in violation of the New York Sex Offender Registration Act ("SORA"), *see* N.Y. Correct. Law § 168-f – Feagins primarily argues that he did not use this email for any reason other than to activate a phone, and therefore the email does not constitute an "internet identifier" for the purposes of SORA. (*See id.* at 2–3.) Specifically, Feagins argues that SORA only requires that sex offenders register "internet identifiers," which are "electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar internet communication." N.Y. Correct. Law § 168-a(18). According to Feagins,

---

[2] *See, e.g.*, Doc. No. 88 at 10 (testimony from therapist that Feagins stopped communication and attending treatment sessions); Gov. Ex. 8 (treatment log revealing that Feagins stopped attending sessions with therapist in June 2020); Doc. No. 88 at 45–46 (testimony from Probation Officer regarding smart phone discovered during search); *id.* at 48 (testimony from Probation Officer that Feagins admitted to downloading and using social-media applications); *id.* at 51–53 (testimony from Probation Officer that Feagins stopped responding to calls and text messages); Gov. Ex. 23 (sign in sheet for Creston Men's Center reflecting that Feagins did not sign in or out after June 30, 2020).

this definition only reaches email addresses that an offender uses to communicate with others, and the government has failed to advance any evidence that Feagins used egenius205@gmail.com for communication. (Doc. No. 90 at 2.) Feagins further argues that, in the event the Court construes SORA's registration requirement to reach his conduct, the Court must conduct an intermediate scrutiny analysis to determine whether the registration requirement runs afoul of the First Amendment. (*Id.* at 2–3 (citing *Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022)).)

The Court is not persuaded by Feagins's argument that SORA's "internet identifier" registration requirement applies only to email addresses that an offender actually uses to communicate with others. Indeed, for substantially the reasons set forth in the government's supplemental submission (*see* Doc. No. 91 at 5–7), the Court concludes that Feagins had an obligation to register his email address, egenius205@gmail.com, under SORA. Whether this registration requirement survives intermediate scrutiny under the First Amendment, however, is a closer question. *See Cornelio*, 32 F.4th at 170–77. But in light of the government's concession that it "does not have the information and evidence necessary to conduct an intermediate scrutiny analysis of SORA's requirement to register internet identifiers" (Doc. No. 91 at 8), the Court is unable to conduct such an analysis on the present record. *See Cornelio*, 32 F.4th at 171 ("The burden of demonstrating that the disclosure requirement satisfies intermediate scrutiny falls on the government."); *see also id.* at 177 ("If the government fails to make [a] showing [that the challenged law furthers important governmental interests and is narrowly tailored], it cannot prevail. The district court cannot supply a justification that the government fails to provide."). Accordingly, Specification 1 is dismissed.

As to Specification 2 – which alleges that Feagins violated SORA by failing to register a change in address within ten days of such change – Feagins asserts that the government failed to

present evidence that he established a new address and thus had an obligation to register a change. (Doc. No. 90 at 3–4.) Specifically, Feagins maintains that he did not reside at any particular, consistent location between June 30 and October 7, 2020, and that he therefore had no obligation to report a change of address after he left his shelter. (*Id.* at 3.) Feagins further contends that – in light of *People v. Allen*, 182 N.Y.S.3d 112 (1st Dep't 2023), which held that SORA's address registration requirement was unconstitutionally vague as applied to the homeless defendant in that case – he cannot be held liable for the violation alleged in Specification 2. (Doc. No. 90 at 4.) The Court disagrees.

The record indicates that Feagins affirmatively abandoned the shelter where he was staying because he knew that the Court would be notified that he was in possession of an unauthorized cellphone.[3] (*See, e.g.*, Doc. No. 88 at 49–57.) The circumstances here are therefore readily distinguishable from *Allen*, which expressly declined to extend its holding to "homeless sex offenders who are able to provide an address such as a shelter at which they are staying." 182 N.Y.S.3d at 118. Unlike the defendant in *Allen*, who was transient, Feagins *did* have an address at a shelter that he was *able to – and did – provide* to Probation, only to have voluntarily abandoned that address without further notice in order to evade supervision. The record further reflects that Feagins's Probation Officer informed him of his SORA address-reporting obligations. (*See* Doc. No. 88 at 42.) The Court therefore concludes that Feagins's abandonment of his address at the shelter constituted a "change of address" for the purposes of SORA.[4] N.Y. Correct. Law

[3] The Court rejects Feagins's contention that he left the shelter due to safety concerns related to the COVID-19 pandemic in light of contrary evidence in the record indicating that, after he left the shelter, he also stopped communicating with his Probation Officer and stopped attending treatment sessions with his therapist.

[4] Feagins asserts that the Court should decline to consider certain documents from the New York State Division of Criminal Justice Services, submitted as Exhibit C to the government's supplemental brief, because the government failed to present such evidence during the hearing, thereby depriving Feagins of the opportunity to test this evidence

§ 168-f(4); *see also United States v. Van Buren*, 599 F.3d 170, 174 (2d Cir. 2010) (explaining that defendant's shift from "having a residential address to having no permanent address" qualified as a "change in his residence" for purposes of the federal Sex Offender Registration and Notification Act (internal quotation marks omitted)); *People v. Wright*, 104 N.Y.S.3d 201, 202–03 (2d Dep't 2019) (holding that defendant did not change his address for the purposes of SORA when he consistently stayed at the same shelter and stayed at a friend's house only on nights when the shelter turned him away because all of the beds were taken).

Finally, Feagins argues that the government is barred from "prosecuting" Specification 8 because the plea agreement in his parallel criminal case before Judge Carter, *see* Case No. 20-cr-218, contains a provision indicating that Feagins "will not be further prosecuted criminally by this Office . . . for possession of child pornography from November 2017 through October 2020," which is the same conduct referenced in Specification 8.[5] (Doc. No. 90 at 5–6.) But the plea agreement has no bearing on the instant proceeding because a revocation of supervised release does not constitute a criminal prosecution, and any revocation decision is within the authority of the sentencing court, not the government. (*See* Doc. No. 91 at 2–4.) It is well-established that revocation proceedings are not deemed part of a criminal prosecution. *United States v. Peguero*, 34 F.4th 143, 157 (2d Cir. 2022); *see also United States v. Diaz*, 986 F.3d 202, 208 (2d Cir. 2021). As the government notes, supervised release is a component of the original sentence and any

via cross-examination. (Doc. No. 94 at 5–6.) Notably, however, Feagins does not contend that any information contained in these documents is unreliable, inaccurate, inadmissible, or incomplete. To the extent that Feagins argues that Specification 2 must be dismissed because the government did not submit evidence from the Division of Criminal Justice Services confirming that he failed to register a change of address, the Court exercises its discretion to reopen the evidentiary record to consider this evidence. *See United States v. Carthen*, 681 F.3d 94, 102 (2d Cir. 2012).

[5] On June 22, 2023, Judge Carter sentenced Feagins to 130 months' imprisonment to be followed by 10 years' supervised release. *See* Case No. 20-cr-218, Doc. No. 79.

sentence for a violation thereof is a sanction for the breach of the court's trust – not punishment for the conduct triggering the revocation. *See Peguero*, 34 F.4th at 161. Moreover, the decision to initiate revocation proceedings rests squarely with the Court, not the government. *See United States v. Amatel*, 346 F.3d 278, 280 (2d Cir. 2003). Feagins is therefore wrong to characterize this revocation proceeding as a "prosecution" in violation of the terms of his plea agreement. Because Feagins pleaded guilty to the federal crime of possession of child pornography and does not dispute that he committed the crime described in Specification 8, the Court finds that the government has proven that violation by a preponderance of the evidence. *See* Case No. 20-cr-218, Doc. No. 67.

For the reasons stated above, IT IS HEREBY ORDERED THAT Feagins's motion is denied as to all but his argument pertaining to Specification 1. IT IS FURTHER ORDERED THAT sentencing will proceed as to Specifications 2 through 8 on Tuesday, September 26, 2023 at 2:00 p.m. Feagins shall make his sentencing submission no later than August 30, 2023. The government shall make its sentencing submission no later than September 13, 2023.[6]

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 95.

SO ORDERED.

Dated: August 16, 2023
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

[6] To the extent that the conduct underlying the Specifications involves victims, the government shall advise the Court if any victims wish to be heard pursuant to the Crime Victims' Rights Act. *See* 18 U.S.C. § 3771.